Oral argument, I will receive 15 minutes per side. Mr. Bursette, the rebuttal. Good morning, your honors. I would request that 4 minutes be reserved for rebuttal. Thank you. May it please the court, my name is John Bursette, and I am here on behalf of my client, Mr. Kimberly Smith Johnson, the appellant. Ms. Johnson requests that this honorable court reverse the findings of the District Court upholding the final decision of the Commissioner of Social Security to deny benefits, specifically for two reasons. One, that my client in fact met a Social Security regulation that would direct a finding of disability, and that the evidence of record supports that finding. You're saying she meets it or she equals it? That she meets it, that she meets that definition. How do you ever get past the onset issue? The onset issue that she alleged? Well, you have to have early onset to meet the criteria, right? Well, you don't have to have onset specifically of the disabling condition prior to age 22, as the regulation defines mental retardation, which I will lay out later in my argument, that the individual must suffer from those deficits in adaptive functioning prior to age 22, but as far as the valid IQ testing and other significant work-related limitations of functioning, that can happen at any point in your life with onset at that point in time. But what evidence do you have of onset before age 22, period? As far as deficits of adaptive functioning, her inability to complete high school, her difficulty in high school, as testified to and as indicated in the record, as well as her struggles with social interactions prior to age 22, as documented by the medical evidence of record and her testimony. She did attend night school to complete high school, but she did have difficulty. And those deficits in adaptive functioning can include social interactions. Is there anything that expert testimony or medical testimony or anything that ties that? I mean, lots of people have trouble before age 22. Generally, you either need a precipitating event, let's say an accident or so on, or you need some kind of diagnosis. Simply having an IQ at a later date, you can't tack that back to every problem you have. Correct, and there is one binding piece of evidence in this case, and that is the medical opinion, the psychological medical opinion of Dr. Ram Kriyakunis. And that is a state disability psychological medical expert who swore in his professional medical opinion that Ms. Smith-Johnson did, in fact, suffer from those deficits in adaptive functioning prior to age 22. And where would you point to that in the record? I would point to that, and I apologize, I don't have the transcript page, but that is in the disability explanation, which is in the AE exhibits. Is it his report that you're referring to? That is his report that I'm referring to. Now, he does also have findings with regards to her moderate concentration, persistence, and pace, moderate social functioning. But, Your Honors, his findings would direct a finding of disability at Step 3, whereas his conclusions would be associated with Step 5. As the disability process is a five-step process, where Step 3 is evaluation of whether or not an individual meets or equals a listing-level regulation, his later findings about her ability to perform any type of work would be immaterial, as his earlier findings would direct that finding of disability pursuant to 12.05c. Going back to that first point as far as listing 12.05c, the defendant actually does not dispute that Dr. Ram Kriyakunis did in fact find that the claimant met that criteria, and the district court admitted to that as well, finding that instead that she didn't suffer from that requisite additional and severe impairment. I'm sorry to go back. No, that's okay. It would be helpful, if you can't do it now, it would be helpful on your rebuttal if you have one, for you to show exactly where in Kriyakunis' report he refers to this onset before age 22. Absolutely, Judge. As the government at page 26 flatly says to the contrary, and I've been looking at your brief to see if I, other than sort of a recitation, your brief cites page ID 566 that does use the words during the developmental period, but at least on its face it appears to be a recitation of the standard rather than a separate finding, but I don't have it in front of me either. And that is, I mean, that is a box that he checked in order to indicate that she suffers from those requisite deficits in adaptive function, and that is a form that the disability reviewers use. But you just used the word suffers, which means currently, as opposed to before. I apologize, Your Honor. That is on the form it is suffered. That was my... Okay, so there is a page on the form, page ID 324, that says significantly sub-average general intellectual functioning with deficits initially manifested during the developmental period, and he checks number four, valid verbal performance or full-scale IQ of 60 through 70. Is that what you're referring to? That's correct, Judge. But was there an IQ test between 60 and 70 before 22? That's not actually a requirement. It's that the IQ test in the prerequisite language in the introductory paragraph requires that the deficits in adaptive functioning be found prior to age 22, and that the valid verbal IQ test in this case of 69 can be found at any point. And is there a case or an interpretation of the regulations that supports your position? There is no binding precedent in the Sixth Circuit that I'm aware of, Your Honor, on that point specifically. To my second point, really, there is an evaluation by Koopman and Dr. Callan. The evaluation was done by Koopman, and the judge actually gives significant weight to that opinion in his determination. But not only does the administrative law judge fail to actually fully reflect that full opinion in his determination and in the hypothetical testimony, hypothetical questioning presented to the vocational expert during the hearing in which the judge relied upon that testimony, the defendant actually makes a very pointed argument that Koopman is not a doctor, cannot provide diagnoses, and so Koopman's lack of that diagnosis of mental retardation is immaterial to this case because Koopman, in fact, could not provide a diagnosis herself of mental retardation. Further, because the judge actually relied upon that opinion evidence, the judge did not fully account for the reading disorder that Koopman did provide. And as far as the limitations of very low stress work, the claimant's ability to perform any work above that very low stress, and then weak attention, concentration, and memory. And that report was signed off on by Dr. Callan. In addition, that Access 2 finding of a deferred diagnosis would reflect that Koopman and Dr. Callan did not have enough information themselves because they were only basing it on that one single evaluation of whether or not the claimant could, in fact, suffer from mental retardation, whereas Dr. Creacunis's medical opinion was based on the entire medical file, entire Social Security exhibits, in making that determination that she does suffer from mental retardation under Social Security regulations. Counsel, going back to the 1205 issue, the government's brief at 25, with a cite on 26, says that counsel at administrative level conceded in the pre-hearing memorandum that she does not meet the capsule definition of mental retardation. Is that an accurate quote, and how would you respond to that? That is an accurate quote from the claimant's administrative level counsel. I would refer us back to the only expert medical opinion evidence of record which the judge did not consider in his determination. Counsel, the claimant's administrative level counsel did not cite to that exact finding either, but claimant's administrative level... The finding, again, probably is going to turn out to be that checkbox that Judge Moore referred to. She had one page number, and I gave you a different page number. Correct. That's what you're really referring to. That's what I'm referring to. Section 1527, 20 CFR 404.1527, requires the administrative law judge, the Commissioner of Social Security, to evaluate every medical opinion of record, and the judge failed to do so in this case at the cost of the claimant's benefits, really, as that medical expert found that she did suffer from the requisite criteria of 12.05C, both the deficits and adaptive functioning prior to age 22, as well as that valid verbal IQ. Now, as far as administrative level counsel's argument that she equaled that definition of disability, certainly those are very close in general, and the judge still did not evaluate any criteria of 12.05C, whether or not she met or equaled that criteria. And Reynolds would direct that when there is, in the Sixth Circuit case of Reynolds, would direct that when there is medical evidence or evidence of a listing, that listing must be evaluated. Judges, I see that my time is up. Do you have any further questions at this time? Thank you, counsel. You'll have your time for rebuttal. Thank you, Your Honors. Ms. Patterson? Good morning, Your Honor. Can you hear me okay? Yes. May it please the Court, Danielle Patterson for the Acting Commissioner of Social Security. I apologize for my absence. The O'Hare Airport gods just did not deem me fit to appear before you this morning in person, and for that I apologize. Starting out with the 12.05C argument, this, in our opinion, is sort of just a red herring in this case. The appellant is sort of clinging to this life raft that has been constructed quite weakly from a single IQ score and a single checkbox on the report of the reviewing state agency psychologist. Those two things notwithstanding, this record overwhelmingly compels a finding that Ms. Johnson did not meet or come anywhere near equaling the listing for mental retardation. In fact, the reviewing state agency psychologist, if you look at the first page of his report, clearly where he makes his ultimate determination as to what step this case should be evaluated at, he clearly does not check either of the boxes showing that she meets or equals the listing. He checks the box saying that her residual functional capacity must be evaluated. Furthermore, again, this is an individual who has not even alleged in the record that she has cognitive difficulties. Counsel a few moments ago suggested that she did not finish high school, and while that was initially true, she said that she dropped out because she was having social problems, problems getting along with people. There's no indication she had cognitive issues. She herself testified she had average grades, and there are several places in the record she indicates she did not require special education. This is completely inconsistent with the type of adaptive functioning deficits that one would expect to see in an individual who is mentally retarded. Furthermore, if you look at the other mental health specialists of record, at least four other mental health specialists opined that she had average intelligence when they examined her, and I will again stress that there's not a single diagnosis in the record of a cognitive impairment other than Ms. Koopman perhaps saying she had a reading problem, which again is what Ms. Koopman thought probably accounted for that single sort of standout unusual low IQ score. This is Judge Moore. Should the ALJ have addressed this point in the decision? The ALJ did address this point in his decision, Your Honor. If you look at page 6 of 10 of the ALJ's decision, although he didn't do it under the auspices of 1205C, he did specifically discuss that intelligence testing and did note that there was not even a finding of borderline intellectual functioning, let alone mental retardation. So although the ALJ did not specifically address this evidence at the step 3 listing part, the ALJ made the right finding that he would need to make to make this court feel secure that he would not on remand find that this individual was mentally retarded or met or equaled that listing. Again, the evidence, including every piece of evidence from Ms. Johnson herself, just overwhelmingly demonstrates that this is not a mentally retarded individual. We don't have deficits in adaptive functioning either before age 22 or after for that fact, and the only person who actually administered the IQ testing, and while Ms. Koopman was a counselor, she was being supervised by a licensed psychiatrist, who was Dr. Callen, said that the higher IQ score, I believe the one that was closer to 89, was actually the true reflection of her intellectual functioning. So I feel confident that this court will see that remanding this case for a more careful evaluation of that issue would serve no useful purpose here, and there's this clearly overwhelming evidence compelling a finding that 1205C was not met or equaled. Is there a specific definition of deficits in adaptive functioning or regulatory precedence on that? Absolutely, Your Honor. There's two places that are instructive on that. The first place would be in our regulations in the introductory language to the mental health listings, which would be found at Part 404, Subpart, I think it's Subpart P, and it's Appendix 1. It's Section 12.00, D as in dog, and then parentheses 6, parentheses A as in apple, discusses that when looking at a mental retardation situation, that IQ scores are really only a small part of the assessment, and it talks there about what type of adaptive functioning deficits we're looking at. It talks about focusing on the educational background and looking at grades and looking at the person's ability to function independently. In fact, if you look at another subsection of Listing 12.00, it's 12.00A, it specifically requires for its severity that the person is basically unable to function independently and is sort of dependent on other people. And those four subsections are meant to sort of be equivalent severity. They're just four different ways you can meet the severity. And, again, looking back at this individual, just can't even begin to find any of those types of deficits. The Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, or DSM-IV revised as we usually call it, also has a very lengthy section on this, and I believe we quoted some of that in our brief, that does, again, talk about what kind of deficits we're talking about. And these people who meet this listing are people who can only work in a sheltered workshop. They are usually in special ed in school. We're talking about people who are, you know, really not able to function independently. And, again, this is kind of a non-starter in this case. This individual certainly has some personality issues and some social issues, but there's just absolutely no evidence of a cognitive impairment at all. If you don't have... Can you talk about the vocational expert testimony in that aspect of the case then? How do you mean, Your Honor? Well, as I understood it, your adversary sort of has two strings to his bow. One says you should have done it under 12.05c, which means you didn't get to the final hearing stage. Alternatively, I'm sure he has also argued that if you do, then there were various defects. So I just was asking whether you wanted to address the latter part independently. Sure. The mental RFC in this case is supported by substantial evidence. Appellant's main argument appears to be that the ALJ somehow didn't incorporate all of the limitations set out by Dr. Criacunas, who is the reviewing psychologist. And while we would still maintain that if you look at the bottom line that Dr. Criacunas gives at the end of his opinion, I think that's at page ID, I want to say 327 or 328, he actually spells out what her functional capacity is, and the ALJ did accommodate all of the limitations that were set out there in his functional capacity for only simple, unskilled work of a routine and repetitive nature. Interestingly, appellant seems to sort of argue that Ms. Koopman was not an acceptable medical source when it's convenient for her argument, but then turns and suggests that she is an acceptable medical source such that the ALJ was compelled to adopt every one of her findings, such as her finding that there was a reading disorder and her finding that there needed to be low-stress work. And our response to that is twofold. Number one, to the extent that Ms. Koopman noted there was a reading disorder, the ALJ limited this individual to unskilled, simple work, the same type of work she had done previously, and there's no evidence in the record that she could no longer continue to perform that type of work. And with respect to the low-stress comment made by Ms. Koopman, we would note that at that time, this was at the very beginning sort of of this medical record, and Ms. Johnson was not taking appropriate medication at that time. It was specifically noted she was not receiving any treatment at that time. And what Dr. Koopman or Ms. Koopman actually said was that she needed to sort of get her mental situation under control with some treatment and that, you know, at that time, unmedicated, you know, she would be limited to low-stress work. Again, despite the fact that the words low-stress don't appear in the RFC, we would advance that the limitation to unskilled, simple, routine, repetitive work is certainly the type of work that would not be particularly high-stressed or requiring, you know, there to be a lot of high demands on that person intellectually or stress-wise. So the ALJ's RFC is supported by substantial evidence, and to the extent that Ms. Johnson argues that the ALJ didn't adopt every single little finding by the reviewing state agency psychologist, we would draw this court's attention to a case that was issued yesterday. It's an unpublished case, but this court issued the Jason Smith case yesterday, and that's case number 133578. And drawing your attention to page 3 of that decision, this court held that there is no requirement that an ALJ adopt the entirety of a state expert opinion, even if affording that opinion significant weight, or that the ALJ provide an explanation for why certain limitations posed by the expert were not incorporated into his residual functional capacity assessment. Did the ALJ account for the fact that she shouldn't be able to do these simple tests for extended periods, or do you think that's not necessary? I would advance that that's not necessary. The only finding really on that issue is the checkbox of Dr. Kriacounas, that she had moderate difficulties sustaining concentration, persistence, or pace. But even he said, in his ultimate conclusion, that she had the capacity to sustain simple, unskilled work. And that's exactly what the ALJ found she could do. So the ALJ's RFC and the hypothetical question which mirrored that RFC are entirely consistent with and supported by those medical opinions. Unless the court has other questions, we would ask that you affirm the Acting Commissioner's decision that Ms. Johnson was not disabled and not entitled to benefits. Thank you, Counsel. Thank you. You'll have four minutes for rebuttal. Thank you, Your Honors. And I will just begin by addressing the page numbers. I have the administrative record page numbers of 268 and 272 for Dr. Kriacounas' medical opinion on the issue of 12.05C. I would also like to briefly address the unpublished case from yesterday. It certainly is distinguishable from the present case in the case addressed by my adversary here. That is a decision where the administrative law judge did address the medical opinion in his determination. At present, the administrative law judge failed and completely omitted to address the opinion, the medical opinion of Dr. Kriacounas, as is required under the treating physician rule. The 12.05C point you've been talking about, was this argued or brought to his attention at all below? I mean, we had focused on an affirmative concession that may have been made below, but was there any place in the record that said, Your Honor, you ought to look at the 12.05C, or was it wholly that the judge should independently have looked at the checkbox and said, okay, I've got to talk about it? Certainly, Your Honor. In counsel's administrative pre-hearing brief to the judge, as we previously discussed, although that administrative level counsel argued that the claimant, Kimberly Smith-Johnson, equaled listing 12.05C, it was still asked that the judge consider the case under 12.05C, which the judge did not do in his determination.  To make sure I got that, this distinction between equaling and meeting, in effect you're saying he argued that taking the evidence as a whole, she might not have met the definition point by point, but her condition would have equaled it. And that was the counsel's administrative level argument, certainly, that she equaled the criteria. Okay, but then that's different than saying that you met it, so in effect the judge didn't have, on the one hand, you're saying he should have addressed more, but he didn't have it put that the checkbox that you're now arguing meant that you met the listings without having to look outside them. That's correct, Your Honor. All right, now I understand it. Fine, thanks. With regards to Appelli's argument that there was no cognitive disorder, it's actually Appelli that argues that Koopman is not a medical expert. I've conceded that she herself is not a medical expert, that is not able to provide a diagnosis, although Dr. Callan, who I've referred to in my appellant's brief, is a medical expert that signed off on it. Dr. Callan felt that the claimant did suffer from a cognitive disorder, specifically that reading disorder, that was never addressed in the administrative law judge's findings, as would be required by social care regulation. So there is actually a cognitive disorder that the judge omitted any consideration of. Dr. Kriacounas was well aware of this cognitive disorder and provided his opinion based on the entire evidence of record. With regards to the latter argument, that the administrative law judge did account for all of those limitations posed by Dr. Kriacounas and Dr. Koopman, that very low-stress work environment isn't necessarily accounted for in that even an unskilled job could require specific production quotas that could lead to stress, and that needs to be addressed with that vocational expert because it's only that vocational expert. I see that my time is up. May I finish the point? Finish your sentence. In that, that vocational expert is the one providing information about what is and is not required by a certain job, and that needs to be fairly reflected in that hypothetical questioning for the judge to be able to rely on that testimony from that expert. Appellant would certainly ask that based on the medical evidence of record, based on the medical opinion evidence of record that was not addressed in the judge's decision, that this case should be reversed and remanded for further adjudication. Counsel. Thank you, Your Honors. The case will be submitted. The clerk may call the next case. Thank you, Ms. Pedersen.